is Cepeda Cabrera versus Attorney General. Good morning, Your Honor. Good morning. May it please the Court, my name is Raymond LaHood. I act for Petitioner Edwin Cepeda Cabrera. And if I may reserve three minutes for rebuttal. Granted. Thank you, Your Honors. Before this Court is an issue of national importance. I stand here for Mr. Cepeda with an understanding that these are issues that have arisen a lot in the past with respect to individuals like him who have been born abroad, lawfully adopted, lawfully entered the United States decades ago when they were young children and by all means have lived the entirety of their lives under the assumption that they were United States citizens until the one day, 30, 40, 50 years later after they've come into the country, after the lawful adoption, after the lawful entry and living that life as an American citizen that one day the adoptee is approached by immigration and customs enforcement authorities to learn that he's not adopted, he's not an adoptee. And the reason that he's not an adoptee, he's not a U.S. citizen. And the reason that he's not a U.S. citizen is because he is the adopted child of a U.S. citizen parent, a native-born U.S. citizen parent. If the government, if we have a law that distinguishes between different categories of people, and here he's adopted, and there is a justification for that, and they've given three justifications for the different treatment of adopted children, namely to prevent immigration fraud, to promote a real relationship between the parent and the child, and lastly protecting the rights of alien parents, which seems to be pretty strong. What do you have to show in order to declare this unconstitutional? Your Honor, as you had noted, the government does pose it those three. Are they not rational? Our argument, Your Honor, is that they're not rational. If I could take them one piece, one by one. In terms of the first argument that the government had presented, they claim, the government claims legitimate interest in ensuring that a real relationship exists between the adopted child and the United States citizen parent. We, the petitioner, submits that it's the adoption in and of itself that makes it sufficient to create that real relationship. In other words, Your Honors, that adoption is sufficient to create relationships in terms of other legal issues, in terms of tax obligations, government benefits, child tax credits, and other abilities to choose, you know, the parent's ability to choose medical providers and schools to where that adopted child could go to. But you don't know if the motivation of the adoption is something other than a real relationship. So doesn't it make sense for the government to have an interest in knowing that there is this relationship and there's not, for instance, immigration fraud or something like that? I would submit, Your Honor, that the adoption in and of itself, if it's a lawful adoption. If it's a lawful adoption. Somebody signs a paper. A lawful adoption, which was the case here, that the extension occurs. So no review by means of a certification would be necessary? We would submit that no review by means of a certification is necessary. In fact, when you do look at the statute that relates to the review, that would be former section 322, it says application of U.S. citizen parents. It says a parent who is a citizen of the United States may apply to the Attorney General for a certificate of citizenship on behalf of a child born outside the United States. And it continues in going through it. It's a poorly drafted statute, to say the least, I must. And it's as you move through it, you notice the poor drafting that exists here, in that at section C, it states subsection A, not subsection B, shall apply to the adopted child of United States citizen adopted parents if the conditions specified under subsection have been fulfilled. So by looking at that statute itself, it quite essentially says, hey, you can apply for a certificate of citizenship, but as an adopted child, only subsection A would apply to you. So therefore, you don't have to avail yourself to, say, subsection B, which requires the oath, which requires the other process of becoming naturalized. Here, in terms of this petitioner, it would have only required necessarily the filing of a paper. I mean, we would submit the filing of a paper. You know, quite honestly, as an immigration practitioner, you know, we file N-600s all the time. And there aren't interviews. They issue them based on documents that we submit. How does that help you, though? That sounds like you're highlighting how easy it is to accomplish the conditions preceding to your client getting the relief that he seeks. The reason that I bring that up is that the position of the government is that this helps avoid immigration fraud. And the position of the petitioner is that it doesn't do that. It's simply a submission of an additional paper. When the adoption itself, we would submit a lawful adoption would be sufficient to prove that the individual has derived citizenship through his or acquired citizenship through the adopted parent. So it's not rational to ask the adoptive parents to take some action here to verify that the adoption is valid, you know, to come forward? That's not rational? Your Honor, we would submit that it's not rational because the adoptive parent has already taken action by formalizing the adoption lawfully. Where? In this case, it was in the Dominican Republic. I mean, but. And the U.S. government doesn't have an interest in not accepting at face value all foreign adoptions wherever they occur? Then that would apply, Your Honor, to any circumstance. Let's say that somebody was to adopt somebody in the Dominican Republic and bring them back to the United States. Using that adoption, they can secure federal government benefits. They could secure, you know, they could send the child to school, and that gives them lawful authority. That gives them permission. That gives them the full control of that child. And if that's sufficient to be enough, why file an additional form that we don't even have to do at this point? Well, like the prior case, you've got two circuits going against you and none going your way. Two isn't as heavy as five. But what's wrong with the Second and Ninth Circuit opinions on this? I must tell you, like in the start of this here, you know, I do understand, and the petitioner understands that the rational basis review is a low-level standard. We do understand that. However, we would submit that that does not necessarily give the legislative authority, you know, a blank check, let's say, to pass any kind of regulation or any kind of statute or the like. But going back to the two cases that the department had, the respondents had referred to, the first one was the Smart Keys. Quite obviously, that's in the Second Circuit, so that's not binding on this court. Maybe persuasive precedent. However, the Smart Keys deals with a completely different statute, that of a naturalized U.S. citizen parent. This deals with a biological-born U.S. citizen parent. So in the case of Smart, the naturalized, the non-natural-born U.S. citizen parent has already naturalized and has become a U.S. citizen. And then that individual, that child, becomes a U.S. citizen by virtue of the naturalization of the parent, not the naturalization of the child. There's a distinction between Smart and the facts of this case. Smart deals with the interest of that naturalized child. And a point that I'd like to make there, too, is that in Smart, an adopted child can, or whomever it is, can establish those conditions at any time. They can be 60, 70, 80 years old, and if they can prove that those conditions were met there, they can establish those conditions at any time and secure derivative citizenship. Unlike the person in this matter, the respondent, the petitioner in this matter, at the age of 18, it stopped. He could not do anything more at that point to acquire that citizenship through the adopted parent, if you were to read the statute as it is. So when you distinguish the two, the three, the naturalization statute that we had discussed, which is referenced in Smart, that would be the distinction, is that there's the naturalization requirement for the alien parent there. And we would submit that that warrants the enhanced procedures there. Okay, what about the Ninth Circuit's opinion indent? The Ninth Circuit's opinion indent is, again, Your Honor, nonbinding. And we would submit to that, although it is persuasive authority. And the Ninth Circuit is quite unfortunately on point in terms of our factual circumstances here. It's similar in terms of the factual circumstances. We would submit, Your Honor, that the Ninth Circuit's decision, though, however, did not meet the rational basis test, the evaluation of the Ninth Circuit had done. And we would respectfully submit that we disagree with the decision. But why? What's wrong with it? Poke holes in its reasoning? Where did it go wrong? It comes back to the same underlying argument that we have here. They went wrong in terms of not acknowledging that the adoption itself would have been sufficient to establish. How about to prevent immigration fraud? And how about to respect the rights of the alien parents who may want to determine the citizenship of their child? In terms of the deterrence of immigration fraud, the petitioner submits, and we would submit that that's not a legitimate interest, when considered in the context of the U.S. citizen adopting a child. This is a U.S. citizen who was born in the United States or has gone through a naturalization process themselves. This is a person who has already established themselves and are deeply rooted in the United States. These are U.S. citizens. But how would that be different from a United States citizen who marries someone to get them citizenship? It's the same kind of idea. Are you saying because someone is established in the United States, they're not going to commit immigration fraud? I'm not necessarily saying that. I believe in the context of the adoption issue. What is required in terms of securing a lawful adoption is a lot more than securing a marriage license from the New York Health Authority, or whoever it is in the state of New York. And with that, we are out of time here. But, you know, in terms of that, we would submit that the adoption in and of itself is what creates it. And even the U.S. citizen, I mean, the U.S. citizen is not an alien. There's no connection, no link, no perception or understanding of the rule of law, let alone how to defraud necessarily the immigration system by adopting a child. As to, if I may, if I may ask to the government's third interest, which is to protect the alien's biological parents and the argument, the government's arguments, and I quote, that automatically conferring citizenship on children lawfully adopted by U.S. citizens could infringe on alien parents' rights to influence the citizenship of their children. First, the government has taken this position. It appears to protect the rights of non-U.S. citizen alien parents over U.S. citizen adopted parents, where I must admit that the government would take the position of an alien parent. But now it certainly is within their interest to take that position. That position has been taken. Nonetheless, even if it appears, it appears to ignore, this appears to ignore the adopted citizen parent as lawfully established by the adoption itself. The adoption that happened, we would submit, if it was a lawful adoption, terminated the rights of the natural biological parents. So at that point, all right, so let's say, for example, we use Section 322 here, 322, former Section 322. The adoption would have to occur before the, you know, the adoption would have to occur before he could apply for the certificate of citizenship there. And at that point, if the adoption has already occurred, there are no more, if it was a lawful adoption, which we, if that's an issue that we would have to go into for the factual finding, we can go to a district court with respect to that if that's necessary. But if it was a lawful adoption, we would submit that that extinguished, that terminated the rights of that biological parent. So the interest no longer exists there. All right, thank you, Mr. Levine. Thank you so much. We'll hear you on rebuttal. Thank you. I mean, thank you. Please second. May it please the court. My name is Stephanie Beckett and I'm here today on behalf of the U.S. Attorney General. This court should deny this position for review because Cabrera cannot negate every conceivable justification for Congress' decision not to automatically confer U.S. citizenship on adopted children. Instead, Congress reasonably required a U.S. citizen adopted parent to apply for a certificate of citizenship for the adopted child. To obtain a certificate of citizenship, certain requirements had to be met. For example, the child had to be physically present in the United States pursuant to a lawful admission under the age of 18 and in the legal custody of the citizen parent and adopted by the age of 16. Perhaps Cabrera could have met those requirements if his adopted father had applied for a certificate on his behalf. Unfortunately for Cabrera, though, it seems his adopted father never did so, hence this constitutional challenge. So is the issue whether the use of age 18 is arbitrary or irrational? Does it come down to that or not really? I don't believe so. I think that his argument is that the entire application process writ large is unconstitutional, that it should be automatic that the adoptive parent's adoption creates U.S. citizenship. Do we just look at the dates that are relevant here? Or do we also need to look at the rational basis for the congressional directives here? Do we need to address those both? Well, I believe that Mr. Cabrera's main challenge is to the constitutionality. He doesn't assert that he could meet the requirements of the statute today or that it should be applied to him today. It is that he should have already automatically acquired U.S. citizenship. So it is a threshold matter of perhaps whether he could meet. It is not required for this court to ask whether he could meet the legal requirements because Cabrera is raising this constitutional challenge. And as Cabrera admits, rational basis review applies here because adoptive children aren't a protected class. And this court's 1980 Breem decision supports that view as it applied rational basis review to distinguish between adopted and biological children. Does he have a good argument on the third standard that is protection of the rights of the alien parents when the adoptive parent was not an alien but was a citizen? So does that take that rational basis off the table here? Well, first I would note that the court could uphold on either of the two first rational bases proposed, either independently or together. The third legitimate interest this court has recognized is an important interest to protect the rights of alien parents. The argument that we're putting forward here is that it's related to the first two arguments, that the adoption could not really look like a U.S. adoption if it happens in a foreign country. We have no assurance that the rights of the alien parents have been terminated through the adoption process. And the requirement for a certificate of citizenship could help advance the interest of protecting alien parents by giving the attorney general the opportunity to review the adoption, make sure it really does fall within U.S. standards, and also the certificate of citizenship's requirements that the child be in the legal custody of the U.S. citizen parents would help resolve the concern that, well, maybe this, for example, foreign adoption, wouldn't really put the U.S. citizen parents in the same stead as is typical in domestic adoptions. Now, as this court noted, the Dent decision, and as Cabrera conceded, the Dent decision out of the Ninth Circuit is directly contrary to his position. The Smart decision, it does deal with a different statutory scheme, but it does uphold treating of adopted and biological children differently in the naturalization context. And it's based on the first two interests that the government puts forward. And then in terms of it's unclear whether Cabrera is really challenging the fact that the process was different for naturalizing adoptive parents versus people who are already U.S. citizens. But there are two cases, again, directly contrary to any constitutional argument against that statute. And that's the Dent decision out of the Ninth Circuit, again, and then Kolyani out of the Second Circuit. Counsel, one of the things I'm not sure sort of necessarily follows is that you say that automatic citizenship for adopted children is different because there's no, quote, guarantee of a real relationship. Right? And sadly, what's the guarantee of a real relationship between a biological parent and the child? Well, at least we know in the biological context that there is some relationship, even if it is simply a blood tie. But in the adoption context, you just have this piece of paper. And that is a pretty strong statement, though. Right. If you're an adoptive parent, I mean, it's a pretty strong statement that you're seeking to be involved with the child and raise the child, and blood tie doesn't necessarily make that same strong statement. Well, again, this interest is kind of tied to the idea of immigration fraud, again. Okay. So that's what I was getting at. So really, the underlying rationale here is the government is saying, look, we're going to trust biological ties more than we're going to – it's really a matter of degree, not a matter of kind. We're not going to trust a piece of paper that says someone was adopted because that might be easier to defraud the government. Is that where we are? Well, in the biological context, it's impossible to commit fraud if you establish that there is that biological connection. And how do you do that? Through a birth certificate? I believe that there are processes. I don't have that information today. Because if it's the birth certificate, what I'm wondering is, you know, could fraudulent birth certificates be as readily available as fraudulent adoption papers in countries of origin? Well, it's not just a matter of fraudulent adoption papers. It's also the matter of someone could legitimately go and adopt someone thinking, well, that's better for that person just because they can get these integration benefits potentially. But they could if they filed the form, right? Even if we assume here that this was a – I don't see anything in the record to support this at all. But if we assume that this were a fraudulent adoption, had the paperwork been filed timely, then we wouldn't be here, right? I mean, that's – as I understand it, that's Mr. LaHood's point. It's no big deal if you file the paper. And if the paper had been filed here, then Mr. Cepeda-Cabrera would be in a different position. So I believe in the case of birth certificates, there is the ability to challenge the birth certificate if it appears to be fraudulent. And in the case of the Certificate of Citizenship, the conditions for the Certificate of Citizenship have to be proven to the satisfaction of the Attorney General. And so Cabrera would have needed to prove that the adoption wasn't fraudulent, that the adoption actually occurred. And also the other factors, such as Cabrera actually being in the legal custody of the U.S. citizen parents. And so those steps would have given the Attorney General the opportunity to detect some immigration fraud. And also just the fact that you have to file a piece of paper making representations to the U.S. government could deter some people, some U.S. citizens, from committing this kind of immigration fraud. And if there are no further questions, I'll yield my time. OK, thank you, Ms. Beckett. Let's hear a rebuttal from Mr. LaHood. Thank you, Your Honors. Just briefly, in terms of, and I appreciate the courts noticing or recognizing the possibility of fake birth certificates, which could happen, and if the, I would submit to the court that if Ms. Stratipour wanted to truly defraud the United States government, you know, why not get a fake birth certificate, let's say, instead of an adoption decree from the Dominican Republic? The same way that a birth certificate can be verified, it can be verified, an adoption decree can also be verified. And moreover, my, in terms of the government's treatment of an adopted child is kind of, is quite honestly quite disturbing, given the, given, you know, the nature of a relationship between a parent and an adopted child. And it takes away from the very nature of it. I mean, an adopted child could have a rare relationship that's more real or better than one with a biological parent and a biological child. That's true with men and women, too, as parents. The Supreme Court recently said that was a rational distinction, right, to treat men and women, mothers and fathers, differently. I believe, if I'm not mistaking, if I'm not mistaking, that was a recent case, and they found that there was an equal protection issue. However, the court there said they couldn't necessarily, and to have it right here. The court couldn't really do anything because they had, if I'm not mistaken, this is the Morales-Santana case, 137, Supreme Court, SCC, 1678, 2017. And here, the majority takes the position that it didn't meet it, and that, however, the court did not know or did not take any action, so it didn't even get into the hands of Congress. They did find unfair treatment. They did find an inequality there. However, the Supreme Court did not take any action in terms of the retroactivity of it. They did apply it prospectively, though, in that case, so, yes. Okay. Thank you. Any other questions? Thank you, Mr. Chairman. Thank you so much. Thank you, counsel. We'll take the matter under advice.